**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

LUZ DELIA QUINTANA,

    Plaintiff,

        v.                         CIVIL NO.: 18-1097 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

Pending before the court is Luz Delia Quintana's ("Plaintiff") appeal from the decision of

the Commissioner of Social Security ("the Commissioner") denying her application for disability

benefits under the Social Security Act. ECF Nos. 1, 24. Plaintiff alleges that the administrative

law judge erred in his RFC determination because he did not properly consider her complaints of

bilateral hand pain and the secondary effects of her medication. It is also claimed by Plaintiff that

the administrative law judge failed to consider all the record evidence regarding her mental

limitations and improperly found she was able to perform her past work.

**I.      Procedural and Factual Background**

On November 8, 2012, Plaintiff filed an application for Social Security benefits alleging

that on January 30, 2012 ("the onset date"), she became unable to work due to disability.

Tr. 115.[1] Prior to becoming unable to work, Plaintiff worked as a housekeeper cleaner, hand

packager, low stich machine operator-garment, and multi needle chain stich machine operator.

Tr. 124. Plaintiff met the insured status requirements of the Social Security Act through

December 31, 2016. Tr. 117. Plaintiff's disability claim was denied on April 29, 2013, and upon

---

[1]  "Tr." refers to the transcript of the record of proceedings.

reconsideration. Tr. 115. Thereafter, Plaintiff requested a hearing which was held on December 11, 2015 before Administrative Law Judge Gregui J. Mercado ("the ALJ"). Tr. 185-219. On May 26, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 124. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 7-14. Plaintiff filed a complaint on February 17, 2018. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 24, 27.

## II. Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C**. **The ALJ's Decision**

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 117. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 30, 2012. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had major depression, carpal tunnel syndrome and polyarthralgia. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 117-18. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the exertional residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift and carry and push and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in a 8-hour workday, stand for 6 hours in an 8-hour workday and walk for 6 hours in an 8-hour workday. [Plaintiff] has no limitations for climbing ramps/stairs, can frequently climb ladders/ropes/scaffolds; has no limitations for balancing, stooping, kneeling or crouching and can frequently crawl. The [Plaintiff] has no limitations for reaching in all directions and could frequently handle, finger and feel bilaterally. There are no visual, communicative or environmental limitations. Mentally, she can perform simple tasks, follow simple instructions, maintain concentration for two hours or more and make simple work related decision. She can never interact with the public and can occasionally interact with coworkers.

Tr. 119. At step four, the ALJ determined that Plaintiff could return to her past relevant work as a housekeeper-cleaner. Tr. 123-24. Thus, the ALJ concluded that Plaintiff was not disabled. Id.

**III.** **Legal Analysis**

Plaintiff raises several challenges to the ALJ's physical RFC finding, particularly with respect to the manipulative limitations. First, Plaintiff argues that the ALJ did not properly

consider her complaints of bilateral hand pain and the adverse side effects of her medications in the RFC determination. ECF No. 24, at 37, 41-43. Next, Plaintiff claims that the ALJ did not "adequately consider [her] very severe and disabling mental impairment." Id. at 35. Lastly, Plaintiff alleges that the ALJ erred by finding that she was able to perform her past work as a housekeeper-cleaner. Id. at 39-40.

**A. The ALJ's RFC Determination Regarding Plaintiff's Physical Limitations**

Plaintiff alleges that the ALJ did not adequately consider her subjective complaints of pain from her carpal tunnel syndrome and back impairment in formulating her RFC. ECF No. 24, at 37-41. Under the regulations, the ALJ must consider a claimant's symptoms, including pain, in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms or pain. See id. at § 404.1529(b). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and consider whether the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record documenting Plaintiff's limited capacity for work. See id. at § 404.1529(c). The ALJ has discretion to evaluate the credibility of a claimant's statements and render an independent judgment in light of the medical findings and other evidence regarding his symptoms. See Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984).

If a claimant's alleged symptoms suggest greater restriction of function than can be demonstrated by objective evidence alone, consideration will also be given to the following factors: (1) claimant's daily activities; (2) nature, duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; and (4) the type, dosage, effectiveness, and

side effects of medication and other treatment or measures which the claimant uses. 20 C.F.R.
§ 404.1529(c)(3).

In the case at hand, the ALJ found that the Plaintiff had the following severe medically determinable impairments: major depression, carpal tunnel syndrome, and polyarthralgia. Tr. 117. Then, it was determined by the ALJ that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 120. In June 2012, an electromyographic study conducted by examining physiatrist Dr. Francisco Romero Llavona ("Dr. Romero") revealed that Plaintiff's carpal tunnel syndrome in the right hand was "mild." Tr. 120, 252. In July 2013, treating general practitioner Dr. Iris Arzuaga González ("Dr. Arzuaga") conducted an electromyogram which revealed bilateral carpal tunnel syndrome for which the Plaintiff was prescribed physical therapy. Tr. 793. The ALJ noted that Dr. Arzuaga's follow up examination findings revealed normal motor strength. Tr. 120, 333, 362, 366, 373, 407.

Regarding Plaintiff's back impairment, the ALJ pointed out that the x-rays of the cervical spine were mostly normal, except for showing some straightening of the spine. Tr. 120, 822. During follow-up visits with Dr. Arzuaga, Plaintiff was recorded as being in no acute distress, being well-appearing, and having normal strength. Tr. 322, 324, 333, 362. Furthermore, treating family practitioner Dr. Nelson De Jesús Ramos ("Dr. De Jesús") noted normal overall musculoskeletal findings. Tr. 290.

The ALJ gave significant weight to the opinion of examining state agency family physician Dr. Cindy Ramírez Pagan ("Dr. Ramírez"). Tr. 121, 456-57. In December 2013, Dr. Ramírez reviewed the record evidence and provided an assessment consistent with a range of light work. Id. Specifically, Dr. Ramírez opined that Plaintiff could, inter alia, lift and carry 20

pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; and stand and/or walk for six hours in an eight-hour workday. Tr. 456. Dr. Ramírez acknowledged that Plaintiff had manipulative limitations but noted that Plaintiff still retained frequent use of both hands. Tr. 457. Dr. Ramírez's opinion is consistent with the assessment of state agency psychiatrist Dr. Pedro Nieves ("Dr. Nieves") who reviewed the record evidence in April 2013 and assessed that Plaintiff could perform light work and frequently use her hands to handle, finger, and feel. Tr. 441.

In support of his RFC finding, the ALJ also relied upon the opinion of examining internist Dr. René Gómez ("Dr. Gómez"). Tr. 121, 737-40. Dr. Gómez opined that Plaintiff could sit for six or more hours; stand for three hours or more; walk without limitation; had difficulty with heavy objects and repeated or prolonged use of the hands; was capable of fine manipulation; and had no significant limitations of movement. Tr. 739. The ALJ referenced Dr. Gómez's clinical findings which "revealed only slight decrease strength (4/5) of the hands bilaterally, the claimant was able to perform all hand functions and there were no significant limitations in the range of motion of the cervical or lumbar spine." Tr. 121, 738, 742-45. Dr. Gómez also found that Plaintiff had only slight limitations in the range of motion of the cervical spine and of the shoulders. Tr. 744-45.

Plaintiff claims that the ALJ should have precluded Plaintiff from "repeated and prolonged use of the hands" based on Dr. Gómez's opinion. ECF No. 24, at 40-41. The ALJ, however, did incorporate a limitation for this condition when he restricted Plaintiff to doing only frequent handling, fingering, and feeling. Tr. 119. The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time.

See SSA Program Operations Manual System. The ALJ's interpretation of Dr. Gómez's opinion as allowing frequent, but not constant use of hands, is supported by substantial evidence because Dr. Gómez also stated that Plaintiff was capable of fine manipulation, that she had no significant limitation of movement, and that she had only mild weakness. Tr. 739. Furthermore, Dr. Gómez found that Plaintiff had an ability to perform all hand functions, such as gripping, grasping, pinching, buttoning a shirt, picking up a coin, and writing. Tr. 120, 738, 742.

Plaintiff also claims that the ALJ ignored examining internist Dr. José Rolón Rivera's ("Dr. Rolón") opinion that she should avoid repetitive and prolonged hand activities. ECF No. 24, at 41; Tr. 930. While Dr. Rolón did say that Plaintiff should avoid repetitive and prolonged hand activities, he also specified that Plaintiff could nonetheless frequently handle, finger, and feel. Tr. 930. Thus, Dr. Rolón's opinion regarding handling, fingering and feeling is not more restrictive than the ALJ's RFC finding. See Tr. 119.

The ALJ also considered Plaintiff's activities of daily living. Tr. 118. Examining physiatrist Dr. Jorge L. Suria Colón ("Dr. Suria") noted that Plaintiff reported being able to take care of her personal grooming needs and that she manages her own medications. Tr. 730. Dr. De Jesús noted that Plaintiff had no "physical disability" in terms of her activities of daily living. Tr. 288, 294, 302, 775, 781. Examining general practice specialist Dr. José B. Morales Claudio ("Dr. Morales") noted "no physical disability and activities of daily living were normal." Tr. 690. Furthermore, Plaintiff's statement about why she stopped working also detracts from Plaintiff's subjective allegations of disability. Tr. 194. Plaintiff testified that she stopped working in her last job as a seamstress in a factory because the factory closed. Tr. 194. Thus, Plaintiff's statement undermines her allegation that she could not work due to a physical impairment. See 20 C.F.R.

§ 404.1529(a) (explaining that the ALJ may consider a claimant's statements when evaluating her subjective allegations).

Plaintiff also alleges that the ALJ's decision did not address the adverse secondary effects of her medications. ECF No. 24, at 41. The evidence related to Plaintiff's side effects from her medications is limited. In an agency questionnaire, Plaintiff alleged that her medications made her feel sleepy and dizzy. Tr. 239, 244. At the hearing, the ALJ specifically asked if her prescribed medications cause any problem, discomfort, or side effects. Tr. 207. Plaintiff replied that the medication makes her sleepy, but admitted that she did not take "the [medication] for nerves" on the day of the hearing. Tr. 207. The ALJ's decision specifically noted that Plaintiff "admitted good response to prescribed medications." Tr. 122. Treatment notes from treating psychiatrist Dr. Carlos Pérez Cortés ("Dr. Pérez") revealed that Plaintiff reported that she does better with medication and that she is "more relaxed and less irritable." Tr. 265, 267. Plaintiff has not presented any evidence that she reported those adverse side-effects to her treating doctors. Instead, Plaintiff's doctors observed that she was in no acute distress and usually well-appearing. Tr. 120, 289, 299, 308, 322. Thus, the ALJ's RFC determination regarding Plaintiff's physical limitations is supported by substantial evidence.

### B. The ALJ's RFC Determination Regarding Plaintiff's Mental Limitations

Plaintiff challenges the ALJ's RFC finding regarding her mental limitations. ECF No. 24, at 33-36. Plaintiff points out that Dr. Pérez rated her global assessment of functioning (GAF) as 45 in November 2015 and as a 40 in September 2016. Tr. 60, 421. Plaintiff faults the ALJ for not explicitly discussing the GAF rating of 40 and for failing to address the Hamilton Depression Scale tests administered by Dr. Pérez in November 2015 and September 2016. Tr. 51-55, 426, 916.

In reaching the mental RFC finding, the ALJ gave significant weight to the opinion of examining psychologist Dr. Annette De Paz Ortiz ("Dr. De Paz"), who testified at the hearing after having reviewed the evidence in the record, including the Hamilton Depression Scale and the GAF scores. Tr. 123, 208. Dr. De Paz testified that she reviewed the records of Dr. Pérez and found that his notes supported "a milder condition" than he had assessed. Tr. 209-11. Dr. De Paz opined that Plaintiff retained the mental RFC to perform simple tasks, which entailed no interaction with the public and only occasional interaction with coworkers. Tr. 211. The ALJ gave Dr. De Paz's opinion significant weight because she was a medical expert "who made a longitudinal review of the complete record." Tr. 123. The ALJ found that Dr. De Paz's opinion was supported by the medical findings and consistent with the opinions and observations expressed by other medical sources in the record. Tr. 123.

For example, examining state agency psychologist Dr. Zulma Nieves ("Dr. Nieves") assessed that Plaintiff could understand, remember, and carry out simple instructions; could sustain attention and pace; was able to adjust to changes in a routine; and was able to interact with supervisors, coworkers, and the public. Tr. 443. Likewise, examining state agency psychologist Dr. Gladys Jiménez Nieves ("Dr. Jiménez") reviewed the record evidence and opined that Plaintiff could execute simple instructions, sustain attention and pace, adjust to changes in work routines, and interact in a socially acceptable way. Tr. 459-60.

The ALJ also considered findings and GAF rating of Dr. Suria who examined Plaintiff on March 19, 2013 and rated her GAF as 60. Tr. 122, 728-34. While the ALJ acknowledged that Dr. Pérez found a GAF of 45, the ALJ noted that Dr. Suria's rating was supported by his clinical findings. Tr. 122-23. Specially, Dr. Suria's GAF rating was supported by his examination findings which revealed that Plaintiff had normal and coherent speech, logical and appropriate

11

thought content, intact associations, good insight and judgment, normal intelligence, no signs of hallucinations or other psychotic process. Tr. 731-33. Dr. Suria's findings also revealed that Plaintiff displayed signs of moderate depression and had some impairment with immediate memory, but her remote memory was intact, her recent memory was adequate, she was oriented in all spheres and she displayed adequate attention and concentration capabilities. Tr. 731-33. The ALJ also considered the findings of Dr. Gómez who evaluated Plaintiff's mental status and found that she was cooperative, alert, oriented in all spheres, and displayed normal memory and intelligence. Tr. 738.

Dr. Pérez rated Plaintiff with a GAF of 45 and opined that Plaintiff was "totally disabled" and would need long term psychiatric treatment. Tr. 911. Despite being a treating physician, the ALJ only assigned "partial weight" to Dr. Pérez's opinion because the ALJ found his progress notes to be of a "routine nature" and did not reflect that Plaintiff is totally disabled. Tr. 122-23. First, Dr. Pérez's statement of "disability" does not constitute a medical opinion because the issue of disability is a finding reserved solely to the Commissioner. See 20 C.F.R. § 404.1527(d). Next, Dr. Pérez's progress notes do not support the severity of Plaintiff's alleged mental impairments because he opined that Plaintiff was fully oriented to person, place, and time, and she had logical, relevant, and coherent thought process. Tr. 278. While Dr. Pérez's notes reflect that Plaintiff reported sleeping most of the time and that she did not do any household chores, Plaintiff told other practitioners that her activities of daily living were unimpaired. See Tr. 421; Tr. 781 (progress notes from Dr. De Jesús found no impairment in Plaintiff's activities of daily living); Tr. 690 (progress notes from Dr. Morales found no impairment in Plaintiff's activities of daily living). Thus, the ALJ assigned "little weight" to Dr. Pérez's opinion on the severity of

Plaintiff's condition. Tr. 123. The ALJ's determination regarding Plaintiff's mental limitations is supported by substantial evidence.

### C. The ALJ's Step Four Determination

Plaintiff argues that she was incapable of performing her past relevant work as a housekeeper-cleaner because her past work required continuous use of her hands and arms. ECF No. 24, at 40. At step four of the sequential process, the ALJ assesses whether a claimant's impairment or impairments prevent him from doing the type of work that he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant retains the capacity to perform his past relevant work when he can perform the functional demands and duties of the job as he actually performed it or as generally required by employers throughout the national economy. See SSR 82-61, 1982 WL 31387 at *2; Ramos-Rodríguez v. Comm'r of Soc. Sec., Civ. No. 11-1323, 2012 WL 2120027, at *5 (D.P.R. June 11, 2012) ("A claimant is in turn deemed capable of performing his past relevant work if his RFC allows him to do the job '[e]ither as the claimant actually performed it or as generally performed in the national economy.'"(citing 20 C.F.R. § 404.1560(b)(2)); Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985) ("However, a claimant does not make a prima facie showing of disability merely by establishing that she cannot return to a particular prior job. Rather, the claimant must establish an inability to return to her former type of work.").

In the case at bar, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper-cleaner. Tr. 123-24. As stated earlier, the ALJ's RFC determination was supported by substantial evidence from the opinions of Dr. Ramírez, Dr. Nieves, Dr. Gómez, Dr. Rolón, and Plaintiff's reported normal daily activities. Even assuming arguendo that Plaintiff is unable to perform her past job as a housekeeper-cleaner as she performed it, the relevant inquiry is whether Plaintiff can perform her past relevant work either as she performed it or as it is

generally performed. See Ramos-Rodríguez, 2012 WL 2120027, at \*5. The Dictionary of Occupational Titles' ("DOT") classifies the housekeeper-cleaner occupation as light-exertional work. See DOT (4th Ed., Rev.), 1991 WL 672783 (Jan. 1, 2016). According to the DOT, the housekeeper-cleaner occupation requires frequent handling and occasional fingering, as opposed to constant handling and fingering.[2] Id. Plaintiff has not cited to any evidence indicating that she could not perform her former type of work in the conditions in which it is generally performed. Therefore, Plaintiff's past work is not precluded by her RFC as she contends. ECF No. 24, at 39-40. Substantial evidence supports the ALJ's determination at step four that Plaintiff could perform her past relevant work as a housekeeper-cleaner. Tr. 124.

## IV.     Conclusion

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of March, 2020.

s/Marcos E. López
U.S. Magistrate Judge

---

[2] As stated earlier, the term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See SSA Program Operations Manual System.